# IN THE COURT OF APPEALS OF IOWA

No. 18-1233
Filed August 7, 2019

**GREATAMERICA FINANCIAL SERVICES CORPORATION,**
Plaintiff-Appellee,

**vs.**

**MONGE & ASSOCIATES, P.C.,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Chad A. Kepros, Judge.

Monge & Associates, P.C., appeals from the district court's order granting summary judgment in favor of GreatAmerica Financial Services Corporation in this breach-of-contract action. **AFFIRMED.**

Samuel E. Jones and Vincent S. Geis of Suttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

Randall D. Armentrout and Leslie C. Behaunek of Nyemaster Goode, P.C., Des Moines, for appellee.

Considered by Mullins, P.J., Bower, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BOWER, Judge.**

Monge & Associates, P.C. (Monge), appeals from the court's order granting summary judgment in favor of GreatAmerica Financial Services Corporation (GreatAmerica) in this breach-of-contract action. Monge contends the trial court erred in failing to consider the close-connection doctrine it raised as an affirmative defense. Finding no error, we affirm.

**I. Background Facts and Proceedings.**

The following facts are undisputed.

GreatAmerica filed a petition contending, Monge (a Florida law firm) leased telephonic equipment from a Florida corporation, Vertical Communications, Inc. (Vertical). On March 13, 2017, Monge sought financing of the system, and it submitted an application for financing through Vertical, which Vertical submitted directly to GreatAmerica, an Iowa corporation. GreatAmerica pre-approved the financing application. Monge and Vertical then entered into a Prefund Request and Authorization/Agreement No. 1234104 (Agreement 1234104) for the lease and installation of a telephone system involving fifty-five phones worth approximately $70,000. Additionally, on April 17, 2017, Monge and Vertical entered into Prefund Request and Authorization/Add-On No. 1234104-001 (Add-On 1234104-001) for financing for the sale of additional cables, licenses, and subscriptions, with an additional monthly payment of $363.90 for thirty-four months. Vertical sought and received preapproval for the financing from GreatAmerica.

GreatAmerica alleged Vertical assigned the Agreement and Add-On to GreatAmerica, and GreatAmerica provided financing for Monge. GreatAmerica

further alleged Monge failed to make the required payments on the Agreement and Add-On, constituting a breach of written contract.

Monge answered, generally denying the allegations and asserting affirmative defenses, including:

> (2) Pursuant to the close connection doctrine, the actions of Vertical Communications, Inc. negate [GreatAmerica's] ability to assert claims as a holder in due course.
> (3) The subject agreement is unenforceable under the doctrine of impossibility and/or impracticability.
> (4) The subject agreement is unenforceable under the doctrine of frustration of purpose.
> (5) The subject agreement is unenforceable under the doctrine of unconscionability.
> (6) [Monge] is not liable to [GreatAmerica] because of the following defense:
>> (a) Failure of consideration
>> (b) Fraud in the inducement
>> (c) Illegality
>> (d) Estoppel
>> (e) Mutual mistake

GreatAmerica filed a motion for summary judgment, noting Agreement 1234104 between Vertical and Monge includes these provisions:

> ASSIGNMENT. You [Monge] may not sell, assign, or sublease the Equipment or this Agreement without our [Vertical's] written consent. We may sell or assign this Agreement and our rights in the Equipment, in whole or in part, to a third party without notice to you. You agree that if we do so, our assignee will have our assigned rights under this Agreement but none of our obligations and will not be subject to any claim, defense, or set-off that may be assertable against us or anyone else.
> . . . .
> If you do not pay any sum within [ten] days after its due date, or if you breach any other term of this Agreement or any other agreement with us, you will be in default, and we may require that you return the Equipment to us at your expense and pay us: (1) all past due amounts and (2) all remaining payments for the unexpired term, plus our booked residual, both discounted at 4% per annum. We may also use all other legal remedies available to us, including disabling or repossessing the Equipment. You agree to pay all our costs and expenses, including reasonable attorney fees, incurred in

enforcing this Agreement.  You also agree to pay interest on all past due amounts, from the due date, at 1.5% per month.

Both Agreement 1234104 and Add-On 1234104-001 contain the following provision:

> YOU AGREE THAT YOUR OBLIGATION TO MAKE THE PAYMENTS CALLED FOR UNDER THE AGREEMENT HEREBY COMMENCES IMMEDIATELY.  YOU FURTHER AGREE THAT YOUR OBLIGATION TO MAKE THE PAYMENTS CALLED FOR UNDER THE AGREEMENT IS UNCONDITIONAL AND THAT YOU WILL TIMELY PERFORM ALL SUCH OBLIGATIONS WITHOUT ANY CLAIM OF SET-OFF, EVEN IF: (A) YOU DO NOT RECEIVE SOME OR ALL OF THE FINANCED ITEMS; (B) THE FINANCED ITEMS ARE RECEIVED BY YOU, BUT NOT ON A TIMELY BASIS; AND/OR (C) THE FINANCED ITEMS DO NOT, AT THE TIME OF YOUR RECEIPT OR THEREAFTER, OPERATE PROPERLY, ARE INEFFECTIVE, OR THERE IS ANY OTHER NONCONFORMANCE IN ANY SUCH FINANCED ITEM.  You agree that any issues you may have concerning delivery, installation, implementation, and/or the quality or fitness of any Financed Item will be resolved exclusively between you and us [Vertical].

GreatAmerica asserted—and supported by an affidavit of its representative Steve Louvar—that Vertical assigned its rights in the Agreement to GreatAmerica in exchange for $57,774.89, and at the time of this assignment, GreatAmerica had no knowledge of any defenses by Monge or any defects in the Agreement, and Monge made two payments to GreatAmerica but none after May 9, 2017.

Again supported by Louvar's affidavit, GreatAmerica asserted Vertical assigned its rights in the Add-On to GreatAmerica in exchange for $9,380.35, and at the time of the assignment, GreatAmerica had no knowledge of any defenses by Monge or any defects in the Add-On, and Monge made no payments for the Add-On.  GreatAmerica contends in the event of default, the Add-On incorporates the terms of the Agreement.

GreatAmerica argued summary judgement was appropriate because the Agreement and Add-On are valid and enforceable, and pursuant to the waiver-of-defenses clause, GreatAmerica enjoys the status of a holder in due course and is entitled to payment regardless of any defense Monge may have against Vertical. Moreover, GreatAmerica argued Monge is unconditionally obligated to make monthly payments to GreatAmerica pursuant to the "hell-or-high-water clause" and damages should be calculated pursuant to the formula in the Agreement. It asserted Monge had raised no real defenses.

Monge resisted, asserting (1) GreatAmerica is not a holder in due course because it has a close connection with Vertical, (2) GreatAmerica cannot enforce the waiver-of-defense provision because it is not a holder in due course, (3) GreatAmerica cannot enforce the hell-or-high-water provision because it is not a holder in due course, and (4) because it is not a holder in due course, summary judgment is not appropriate

In support of its resistance, Monge submitted its application for credit to Vertical, the Vendor Agreement between GreatAmerica and Vertical, and comments between representatives of both GreatAmerica and Vertical in relation to Monge's credit application. In its brief in support of its resistance to summary judgment, Monge argued there was a close connection between the two entities and stated, "There is a clear question of fact regarding whether Vertical breached the underlying contract."

The district court concluded GreatAmerica had established there were no genuine issues of material fact and GreatAmerica was entitled to judgment as a matter of law in its breach-of-contract action because a waiver-of-defense clause

is enforceable by an assignee if the assignment is taken for value, in good faith, and without notice of any claim or defense[1] and because a hell-or-high-water clause is enforceable whether or not the assignee is a holder in due course.[2]

The district court wrote:

> Mr. Louvar's affidavit, which is unrefuted by [Monge], establishes that [GreatAmerica] took assignment of the Agreement and Add-On for value, in that [GreatAmerica] paid Vertical $67,155.24 in exchange for the assignments. Iowa Code [section] 554.1201(2)(t) defines good faith as "honesty in fact and observance of reasonable commercial standards of fair dealing." There is no evidence in the record of any behavior by [GreatAmerica] that could be found to be lacking in good faith. Mr. Louvar's affidavit also establishes that when the assignment was made, [GreatAmerica] had no knowledge of any claims or defense regarding the Agreement or Add-On. Because [GreatAmerica] took the assignment for value, in good faith, and without notice of any claim or defense, the waiver of defense clause in this case is valid, and [Monge] cannot raise its defenses against [GreatAmerica].
>
> [Monge] has not disputed that it entered into the Agreement and Add-On with Vertical; that Vertical assigned its interest in the Agreement Add-On to [GreatAmerica]; that [Monge] is required to make monthly payments pursuant to the terms of the Agreement and Add-On; and that [GreatAmerica] is entitled to a damages award pursuant to the calculation formula in the Agreement and Add-On. [Monge] also has not disputed that [GreatAmerica] was not aware of any claims or defenses by [Monge] with regard to the Agreement or Add-On, or that [Monge] has defaulted on the Agreement and Add-On. While [Monge] has argued that [GreatAmerica] has not established its status as [a] holder in due course, the court notes that the *Wolfe* court specifically adopted the position that an assignee, in this case [GreatAmerica], may enforce a hell-or-high-water clause regardless of its holder-in-due-course status. In agreeing to the hell-or-high-water clause in the Agreement, [Monge] agreed that its payment obligations were non-cancelable, and [Monge] has not disputed that it failed to make payments.

---

[1] *See C&J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 76–78 (Iowa 2011).
[2] *See Citicorp of N. Am., Inc. v. Lifestyle Commcn's Corp.*, 836 F. Supp. 644, 646 (S.D. Iowa 1993).

The court specifically noted Monge's close-connection argument but granted GreatAmerica's summary judgment motion because "the Iowa Supreme Court has not specifically adopted the close-connection doctrine."

Monge appeals, contending the court erred in failing to consider the close-connection doctrine.

**II. Scope and Standard of Review.**

We review the grant of summary judgment in favor of GreatAmerica for errors at law. *See Wolfe*, 795 N.W.2d at 73. Summary judgment is proper when the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The non-moving party— Monge—is entitled to have the evidence viewed in the light most favorable to its position. *See Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 895 (Iowa 2014). "Where reasonable minds can differ on how an issue should be resolved, a fact question has been generated, and summary judgment should not be granted." *Wolfe*, 795 N.W.2d at 73. "[O]ur review is limited to whether a genuine issue of material fact exists and whether the district court applied the correct law." *Id.*

**III. Discussion.**

We begin by noting, "Contracting parties have wide latitude to fashion their own remedies for a breach of contract and to deny full effect to such express contractual provisions is ordinarily impermissible because it would 'effectively reconstruct the contract contrary to the intent of the parties.'" *Id.* at 77 (citation omitted). "Thus, courts generally enforce contractual limitations upon remedies unless such limitations are unconscionable." *Id.*

It is undisputed Monge entered into agreements with Vertical containing both a hell-or-high-water provision and a waiver-of-defenses provision. Monge argues there remain genuine issues of material fact as to GreatAmerica's close connection to Vertical such that it may assert its defenses.

"A hell-or-high-water clause is a contractual provision that requires the lessee to absolutely and unconditionally fulfill its obligations under the lease in all events (i.e., come hell or high water)." *Id.* at 76–77. "Such clauses are common in the commercial leasing industry." *Colo. Interstate Corp. v. CIT Grp./Equip. Fin.*, 993 F.2d 743, 749 (10th Cir. 1993); *see Lifestyle Commc'ns Corp.*, 836 F. Supp. at 656. While some courts find the two types of clauses indistinguishable and require a holder-in-due-course status before an assignee may enforce them, our supreme court has differentiated the provisions: "a hell-or-high water clause protects the lessor whereas a waiver-of-defense clause protects an assignee of the lessor." *Wolfe*, 795 N.W.2d at 78. Under Iowa law then, "an assignee may enforce a hell-or-high-water clause irrespective of its holder-in-due-course status." *Id.* at 78.

**A. Hell-or-high-water clause.** Under the hell-or-high-water clause, Monge agreed that its obligations to make payments under the Agreement and the Add-On were to "commence[ ] immediately" and its obligations were "unconditional," meaning Monge would be required to meet its payment obligations even if the equipment was not timely delivered, was not delivered at all, or failed to operate properly. GreatAmerica, Vertical's assignee may enforce the hell-or-high-water clause. *See id.*

The *Wolfe* court did acknowledge that even though an assignee may enforce a hell-or-high-water provision, the lessor "may still raise claims and defenses that relate to contract formation." 795 N.W.2d at 78. Here, Monge summarily asserted several affirmative defenses (failure of consideration, fraud in the inducement, illegality, estoppel, and mutual mistake). Monge asserts GreatAmerica did not challenge its affirmative defenses and therefore is not entitled to summary judgment. However, Monge alleges no facts to support any of these defenses.[3] Monge had the burden of proof on alleging facts to support its affirmative defenses. *See Continental Cas. Co. v. Kinney Co.*, 140 N.W.2d 129, 130 (Iowa 1966). Although the moving party has the burden to show there are no genuine issues of fact, when a motion for summary judgment is supported—as it is here—"the nonmoving party must respond with specific facts showing there is a genuine issue for trial." *Thorton v. Hubill, Inc.*, 571 N.W.2d 30, 32 (Iowa 1997). "In order to meet this requirement, the nonmoving party "may not rely on the hope of the subsequent appearance of evidence generating a fact question." *Id.* Even viewing the record in the light most favorable to Monge, Monge has asserted no facts in support of its defenses. The district court did not err in granting summary judgment to GreatAmerica.

**B. Waiver-of-defenses clause.** The agreements between Vertical and Monge include a waiver-of-defenses provision in which Monge agreed "[Vertical] may sell or assign this Agreement and our rights in the Equipment, in whole or in part, to a third party without notice to you" and the assignee "will have our assigned

---

[3] Monge asserts only that there is a genuine issue as to whether there is a close connection between GreatAmerica and Vertical.

rights under this Agreement but none of our obligations and will not be subject to any claim, defense, or set-off that may be assertable against us or anyone else."

An assignee may enforce a waiver-of-defenses provision only if assignee takes assignment for value, in good faith, and without notice of any claim or defense. Iowa Code § 554.9403(2) (2017); *see Citicorp*, 836 F. Supp. at 657 ("Due to the tremendous protection these waiver of defense clauses bestow upon lease assignees, these clauses are enforceable by an assignee only if the assignee takes the assignment for value, in good faith and without notice of any claim or defense.").

GreatAmerica supported its motion for summary judgment with Louvar's affidavit in which he asserted GreatAmerica took the assignment for value, in good faith, and having no notice of a claim or defenses. Monge relies upon the close-connection doctrine to negate GreatAmerica's assertion of an assignment taken in good faith.

With respect to the close-connection doctrine, our supreme court has stated:

> The close-connection doctrine developed in the context of negotiable instrument transactions to prevent holder-in-due-course status where the transferor was closely affiliated with the transferee. "[A] transferee does not take an instrument in good faith when the transferee is so closely connected with the transferor that the transferee may be charged with knowledge of an infirmity in the underlying transaction."

*C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 761 (Iowa 2010)) (quoting *Arcanum Nat'l Bank v. Hessler*, 433 N.E.2d 204, 209 (Ohio 1982) (alterations in original). "[T]he doctrine of close connectedness was developed in part because of the difficulty of proving the transferee's actual

knowledge of problems in the underlying transaction. The doctrine allows the court to imply knowledge by the transferee when the relationship between the transferee and transferor is sufficiently close to warrant such an implication." *Arcanum*, 433 N.E.2d at 211.

"The allowable defenses against a holder in due course are limited to 'real defenses' such as infancy, duress, lack of capacity, and 'fraud in factum.' *See* Iowa Code § 554.3305(2)." *GreatAmerica Fin. Servs. Corp. v. Meisels*, No. 15-0933, 2016 WL 5480718, at *5 (Iowa Ct. App. Sep. 28, 2016). Monge alleged none of the "real defenses" to a holder in due course, mentioning only "fraud in inducement" as an affirmative defense. Even assuming we recognize the close-connection doctrine, Monge has asserted no infirmity in the underlying transaction about which GreatAmerica may be inferred to know.

Finding no error, we affirm summary judgment in favor of GreatAmerica.

**AFFIRMED.**